1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRADLEY DAVID TUCKER,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

NO.  C13-1407-RSM-JPD

REPORT AND
RECOMMENDATION

Plaintiff Bradley David Tucker appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") which denied his application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

§§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

forth below, the Court recommends that the Commissioner's decision be REVERSED and

REMANDED.

I.       FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 22 year old man with a high

school education.  Administrative Record ("AR") at 51.  His past work experience includes

employment as a fast food worker.  AR at 52, 86.  Plaintiff was last gainfully employed in

February 2008.  AR at 280.

REPORT AND RECOMMENDATION - 1

1    On June 29, 2010, plaintiff filed a claim for SSI payments.  AR at 185-91.  Plaintiff

2    asserts that he is disabled due to bipolar disorder, obsessive compulsive disorder, depression,

3    anxiety, and hearing loss.  AR at 106.

4    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 94-

5    116.  Plaintiff requested a hearing which took place on January 10, 2012.  AR at 41-93.  On

6    April 27, 2012, the ALJ issued a decision finding that plaintiff was disabled from June 28,

7    2010 through July 31, 2011, but that as of August 1, 2011, plaintiff was not disabled because

8    he had medical improvement that impacted his ability to work and thus could perform a

9    specific job existing in significant numbers in the national economy.  AR at 16-39.   Plaintiff's

10   administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5,

11   making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42

12   U.S.C. § 405(g).  On August 8, 2013, plaintiff timely filed the present action challenging the

13   Commissioner's decision.  Dkt. No. 1.

14                          II.      JURISDICTION

15   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16   405(g) and 1383(c)(3).

17                          III.      STANDARD OF REVIEW

18   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19   social security benefits when the ALJ's findings are based on legal error or not supported by

20   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

24   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Tucker bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On April 27, 2012, the ALJ issued a decision finding the following:

1.     The claimant has not engaged in substantial gainful activity since June 28, 2010, the alleged onset date.

2.     From June 28, 2010 through July 31, 2011, the period during which the claimant was under a disability, the claimant had the following severe impairments: bipolar disorder, generalized anxiety disorder, social anxiety, obsessive compulsive disorder (ODC), attention deficit hyperactivity disorder (ADHD).

3.     From June 28, 2010 through July 31, 2011, the period during which the claimant was disabled, the severity of the claimant's impairments met the criteria of section 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925).

4.     The claimant was under a disability, as defined by the Social Security Act, from June 28, 2010 through July 31, 2011.

5.     The claimant has not developed any new impairment or impairments since August 1, 2011, the date the claimant's disability ended.  Thus, the claimant's current severe impairments are the same as that present from June 28, 2010 through July 31, 2011.

6.     Beginning August 1, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

7.     Medical improvement occurred as of August 1, 2011, the date the claimant's disability ended.

8. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing.

9. After careful consideration of the entire record, the undersigned finds that, beginning August 1, 2011, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  The claimant is able to understand, remember, and perform simple, repetitive tasks as well as some detailed tasks.  He should not perform work requiring direct contact with the general public.

10. The claimant does not have past relevant work.

11. Since August 1, 2011, the claimant has been a younger individual age 18-49.

12. The claimant has at least a high school education and is able to communicate in English.

13. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

14. Beginning August 1, 2011, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform.

15. The claimant's disability ended August 1, 2011.

AR at 23-35.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in improperly rejecting portions of the opinions of the medical expert who testified at the hearing, Dr. Kenneth Asher, Ph.D.?

2. Did the ALJ err in evaluating plaintiff's credibility?

3. Did the ALJ err in posing incomplete hypotheticals to the vocational expert ("VE"), which did not include all of plaintiff's functional limitations?

4. Should the claim be remanded for an immediate award of benefits?

Dkt. No. 16 at 1.

1

VII.    DISCUSSION

2

A.    The ALJ erred in her consideration of Dr. Asher's opinion

3    ALJs are obligated to consider the opinions of non-examining state agency physicians

4  that relate to the nature and severity of an impairment, or whether a claimant meets or equals a

5  listing.  20 C.F.R.  §§ 404.1527(f)(2)(ii), 416. 927(f)(2)(ii).  These opinions, however, are

6  entitled to less weight than treating or examining doctors.  *Lester v. Chater*, 81 F.3d 821, 830

7  (9th Cir. 1995) (internal citation omitted).  An ALJ must evaluate the opinion of a non-

8  examining source, and must explain the weight she assigns it.  *See* SSR 96-6p.

9    Dr. Asher's opinion is the only medical opinion in the record regarding plaintiff's

10  functioning after August 1, 2011.  He reviewed the entire medical record and heard plaintiff's

11  testimony during the hearing.  AR at 33.  He testified that until August 1, 2011, plaintiff met

12  Listings 12.04 for Affective Disorders and 12.06 for Anxiety Related Disorders.  AR at 74.

13  Dr. Asher opined that during summer 2011, plaintiff's symptoms improved, his restrictions in

14  activities of daily living became mild, his impairments in concentration persistence and pace

15  became mild to moderate, but his social impairment remained marked.  AR at 76.  Based on

16  plaintiff's testimony that he experiences three bad days a week, Dr. Asher opined that plaintiff

17  had an aggregate of two episodes of decompensation.  AR at 76-77.  Dr. Asher further opined

18  that even if plaintiff's improvement continued, he probably would continue to have "a small

19  handful of days each month so bad that he wouldn't be able to make it out [of his] house."[2]

20  AR at 81 ("[I]t might add up to two or three bad days a month.").  Dr. Asher also opined that at

21  present, plaintiff would be able to perform both simple, repetitive tasks and some detailed tasks

22  in an environment requiring no direct contact with the general public.  AR at 82-83.

23

24    [2] The ALJ did not include this opinion in her discussion of Dr. Asher's testimony.  *See* AR at 32-33.

REPORT AND RECOMMENDATION - 7

1      The ALJ gave "some weight" to Dr. Asher's opinions related to the time period after

2   August 1, 2011:

3          Taken alone, his functional assessment is well supported by the record since
           August 1, 2011, which reflects intact cognition and increased interaction with
4          friends.  However, Dr. Asher's functional assessment is somewhat inconsistent
           with his testimony regarding the "paragraph B" criteria.  If Dr. Asher is
5          accepting the claimant's testimony that he has three bad days per week to find
           two "aggregate" episodes of decompensation, then *it is unclear how he can
6          simultaneously find that the claimant would be able to maintain workplace
           attendance on a regular and continuing basis*.  He based this opinion on the
7          evidence since June of 2010, when he had already testified that the claimant's
           impairments were at listing-level severity prior to the summer of 2011.  In
8          addition, a finding that the claimant continues to have *three bad days per week*,
           even after August of 2011, is inconsistent with Dr. Asher's own testimony
9          regarding symptom improvement.

10  AR at 33 (emphases added).

11      Plaintiff contends that the ALJ failed to cite substantial evidence in support of her

12  decision to discount Dr. Asher's opinions.  Plaintiff highlights Dr. Asher's opinion that

13  plaintiff would continue have a few days each month where he would not be able to leave the

14  house.  In response, the Commissioner acknowledges that, contrary to the ALJ's finding, Dr.

15  Asher offered no opinion that plaintiff could maintain workplace attendance.  The

16  Commissioner nevertheless argues that this error was harmless because the ALJ found that

17  "Dr. Asher's testimony that Plaintiff would have 'three' or 'a handful' of days each *month*

18  where he would not be able to make it out of the house was inconsistent with Dr. Asher's own

19  symptom improvement."  Dkt. No. 17 at 10 (citing Tr. 33) (emphasis added).

20      The Court agrees with plaintiff that the ALJ erred.  The Commissioner incorrectly

21  argues that the ALJ discounted Dr. Asher's testimony that plaintiff would have a handful of

22  days each *month* where he would be unable to leave his house.  In fact, the ALJ offered no

23  discussion of that opinion by Dr. Asher.  Rather, the ALJ discounted Dr. Asher's opinion that

24

1    plaintiff had two "aggregate" episodes of decompensation because he based this finding on

2    plaintiff's testimony that plaintiff had three bad days per *week*.[3]  *See* AR at 33.

3         The ALJ's failure to consider Dr. Asher's opinion that plaintiff would be unable to

4    leave his house three days a month was error.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041

5    (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence") (citing 20 C.F.R. §

6    404.1527(b)); SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical

7    source, the adjudicator must explain why the opinion was not adopted."); *Sousa v. Callahan*,

8    143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-

9    examining physician by reference to specific evidence in the medical record.").  This error was

10   harmful because the ALJ failed to incorporate Dr. Asher's opinion into the hypothetical she

11   posed to the VE.  *See Thomas*, 278 F.3d at 956 (a hypothetical posed to a VE must include all

12   of the claimant's functional limitations supported by the record); *Matthews v. Shalala*, 10 F.3d

13   678, 681 (9th Cir. 1993) (a VE's testimony based on an incomplete hypothetical lacks

14   evidentiary value to support a finding that a claimant can perform jobs in the national

15   economy).

16        As discussed below, remand for further administrative proceedings is the appropriate

17   remedy for the ALJ's failure to properly consider Dr. Asher's opinions, particularly his opinion

18   that plaintiff would continue to be unable to leave his house a handful of days per month due to

19   his impairments.  On remand, the ALJ should reassess Dr. Asher's opinions and, as necessary,

20   revise plaintiff's RFC and proceed with steps four and five.

21

22

23

24        [3] The Court finds no error in the ALJ's decision to discount Dr. Asher's testimony
     regarding plaintiff's two "aggregate" episodes of decompensation.  *See* AR 33.

REPORT AND RECOMMENDATION - 9

1

B.　　On Remand, the ALJ Should Re-Evaluate Plaintiff's Credibility

2

The ALJ found that from June 28, 2010 through July 31, 2011, plaintiff's statements

3

concerning the intensity, persistence, and limiting effects of his alleged symptoms were

4

"generally credible."  AR at 28.  Beginning August 1, 2011, however, the ALJ found that

5

plaintiff's statements regarding his alleged symptoms were not fully credible because the

6

record reflected only sporadic mental health treatment and plaintiff did not seek out free or

7

low-cost treatment options; plaintiff's impairments improved with treatment as of August 1,

8

2011; plaintiff's daily activities were inconsistent with his allegations of disabling limitations

9

beginning on August 1, 2011, including increased interaction with friends.  AR 31-32.

10

Plaintiff argues the ALJ erred by failing to provide clear and convincing reasons for

11

discounting his credibility.  Specifically, he contends that it was improper for the ALJ to rely

12

on his frequency of treatment because there was little change from the frequency during the

13

period when the ALJ found plaintiff credible and, and because he offered reasonable

14

explanations for not treating more frequently and there is no evidence that he was aware of free

15

or low-cost treatment options.  He also argues that his symptom improvement did not mean he

16

was employable and Dr. Asher testified that despite this improvement, "things are still really

17

tough for him."  AR 75; *see also* AR 76-81 (Dr. Asher's testimony regarding plaintiff's

18

continued difficulties).  Finally, plaintiff contends that it was erroneous for the ALJ to rely on

19

his activities of daily living because they were not significantly different from the time period

20

when the ALJ found him disabled, and that substantial evidence does not support the ALJ's

21

finding that he had increased interactions with friends.

22

Because this case is being remanded for reconsideration of the medical evidence, and

23

credibility determinations are inescapably linked to conclusions regarding medical evidence,

24

20 C.F.R. § 404.1529, the Court reverses the ALJ's credibility finding as to the time period

REPORT AND RECOMMENDATION - 10

after August 1, 2011, and remands the issue.  After re-evaluating the medical evidence, the ALJ should reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.  The Court notes the following to guide the ALJ in her reconsideration of plaintiff's credibility.  First, the ALJ should reconsider whether the frequency of plaintiff's mental health treatment undermines the severity of his symptom testimony in light of the frequency of treatment during the period when the ALJ found plaintiff credible.  Similarly, in determining whether plaintiff's daily activities are inconsistent with his statements regarding the severity of his symptoms and limitations, the ALJ should consider whether plaintiff's daily activities materially changed from the time when the ALJ found him to be credible.  Second, the Court finds that plaintiff's failure to seek out free or low-cost mental health treatment does not undermine the credibility of his testimony regarding the severity of his symptoms because there is no evidence that he was aware such options existed.  Third, the ALJ should consider whether the degree of improvement indicated by the medical evidence contradicts plaintiff's testimony regarding his improvements.  Fourth, although plaintiff reported having "a lot going on with his friends" in September 2011, AR 319, there is no evidence that these activities were in person; indeed, the Court has found no evidence in the record from the relevant period that contradicts plaintiff's testimony that essentially all of his friends are online.  This may impact the ALJ's credibility determination.

   C. <u>The Court need not address plaintiff's step five arguments</u>

    Plaintiff contends the ALJ improperly found he could perform jobs in the national economy because the hypothetical questions posed to the VE did not reflect a comprehensive RFC.  In making this argument, plaintiff merely reiterates his arguments that the ALJ erred in assessing Dr. Asher's opinions and rejecting his testimony.  As the Court has already addressed

these arguments and found that remand is appropriate, it need not specifically consider plaintiff's step five arguments.

D.   <u>This case should be remanded for further proceedings</u>

Plaintiff asks the Court to remand for an immediate award of benefits.  The Court has discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  As noted above, the Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey*, 298 F.3d at 1076.  Here, the Court finds that there are outstanding issues that must be resolved because the VE did not address a hypothetical including all of plaintiff's alleged limitations and the limitations opined by Dr. Asher.  *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) ("In cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.") (quoting *Harman*, 211 F.3d at 1180).  Accordingly, the Court declines to remand for an award of benefits and instead remands for further proceedings.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** days of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may

REPORT AND RECOMMENDATION - 12

be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed,
the matter will be ready for consideration by the District Judge on April 18, 2014.

DATED this 31st day of March, 2014.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13